# State of Vermont v. John J. McCarthy, Jr.

[589 A.2d 869]

No. 88-636

Present: Allen, C.J., Peck, Dooley and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed February 22, 1991

*Jane Woodruff,* Orleans County State's Attorney, Newport, and *Gary Kessler, Rosemary S. Hull* and *Pamela Hall Johnson,* Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Vincent Illuzzi,* Orleans, for Defendant at trial, *Gensburg Axelrod & Adler,* St. Johnsbury, for Defendant-Appellant on appeal.

**Dooley, J.** In this appeal from his conviction for lewd or lascivious conduct with a child, 13 V.S.A. § 2602, defendant makes numerous challenges to the admissibility of the child's videotaped testimony and the evidence to impeach his character witnesses. Although defendant failed to preserve his claims of error, we find plain error in the admission of evidence about an unrelated incident with another child and reverse the conviction and remand for a new trial.

On November 20, 1987, the child-complainant was invited to stay with the mother of a friend after she complained that her mother was beating and slapping her. While present at the friend's home, complainant told her friend's mother that "her father had touched her private parts with his hands." Thereafter, the Vermont Department of Social and Rehabilitation Services (SRS) and the Vermont State Police became involved, along with various professionals, and the complaint led to this prosecution for one count of sexual abuse during the period between June and December of 1987.

Defendant denied that the alleged incident occurred. He was supported by his ex-wife and his numerous sons and daughters. The position of the family members was that the alleged incident could not have occurred as it was reported by the complainant and did not occur.

The complainant did not testify before the jury at the trial. Instead, her videotaped testimony was admitted pursuant to V.R.E. 807 based on a finding by the trial court that requiring the child to testify would "present a substantial risk of trauma to the child." V.R.E. 807(c). In her videotaped testimony, she

answered simple, direct, leading questions after failing to answer open-ended ones. She did not elaborate on any of her responses. Her rigid posture, flat effect, and soft speaking voice conveyed her anxiety. When first asked about the alleged abuse, complainant stopped answering altogether. Only after repeated solicitation did she whisper and gesture answers to the questions.

The remaining testimony from the State came from two doctors who had examined the complainant, a social worker who had interviewed and treated the complainant at the regional mental health clinic, the complainant's teacher, and her friend's mother. Defendant took the stand and, in addition, presented a character defense consisting largely of testimony by his ex-wife, his sons, and his daughters. Many of these witnesses also testified to events during the period covered by the information.

Although defendant raises a number of issues on appeal, we address only one relating to the admission of certain evidence in the cross-examination of defendant's witnesses. The issue arose in the cross-examination of defendant's first witness, his daughter P.M. On direct examination, P.M., who was twenty-five years old when she testified, described her father as honest, very caring, a good father, very modest, and not obscene or seductive. Before commencing cross-examination of P.M., the state's attorney stated to the court that he had a good faith basis to believe that another of defendant's daughters, H.M., had reported to authorities that she had seen defendant have oral sex with his minor son, S.M., in 1985 and the circumstances were known to the family. He indicated that he knew of the incident because it was mentioned in local mental health agency records.

The prosecutor indicated his intent to cross-examine P.M. about this incident to determine her knowledge of it and its effect on her opinion of defendant. There was no formal objection to the questioning although defendant's counsel did express concerns that the questioning went beyond the direct examination. The prosecutor then asked P.M. whether she was aware of the report and whether it affected her opinion of defendant's character. P.M. answered that she was aware of the report but it was unfounded and did not affect her opinion of defendant.

After using the incident in this way in cross-examining one more character witness, the prosecutor changed tactics with defendant's former wife. Here, the prosecutor attempted to elicit through the witness the exact details of the reported sexual acts. The witness refused to answer, requiring the court to intervene to order her to answer at least a modified question. In the argument to the court, the prosecutor made clear that he did not believe that the report was unfounded, transmitting the opinion of a mental health worker that "[H.M.] is unlikely to make up the kind of details that she had conveyed, and that it was the very details itself that indicated that something had happened." From that point forward, his questioning showed that he believed the incident had occurred, that it had been covered up within defendant's family, and that he wanted to demonstrate this to the jury. Rather than focusing on how the report might affect the former wife's opinion of defendant's character, the prosecutor's questions probed her conduct on hearing the report and the delay between the report and the statements given to SRS. He never even asked the ex-wife what impact the report had on her opinion of defendant's character.

The issue arose again when defendant took the stand. The prosecutor asked whether defendant had ever sexually abused H.M. and then whether he had ever sexually abused his son. He cross-examined in detail on the report, insisting on the right to present the nature of the sexual conduct to the jury, and on defendant's actions in response to it. On redirect, defendant responded to the cross-examination by denying he ever abused his son. His son also testified and denied the incident.

The prosecutor made clear where he was going in his rebuttal argument to the jury:

> What we began to do was ask witnesses to test their opinion. . . . Weren't you aware that two years ago his other daughter [H.M.] reported having seen something, reported graphic details of oral sex? Did you consider that when you were forming your opinion that Mr. McCarthy is a decent, hardworking person?
>
> Well, yes those weren't true. They didn't pan out. We didn't believe her when it first came up. Couldn't believe it. Now, a child who is even younger than [the complainant] now . . . was confronted by a family who is disbelieving the

> minute they hear it. She isn't questioned until a couple of months later.

> For whatever reason, which is not for your concern, this is not a case about that, but at that time she doesn't talk about it. No charges are brought. Mr. Illuzzi has mentioned that. Is it surprising that a four-year-old after a couple of months with a family that doesn't believe her at all, who's later questioned, didn't report anything?

The point of this argument is clear. In the prosecutor's view, defendant's family failed to follow up on H.M.'s report and as a result H.M. failed to repeat what she saw.

Defendant argues here that the cross-examination on H.M.'s report of seeing defendant sexually abuse S.M., together with the closing argument, was improper and requires reversal. Although the law bearing on the issue before us is relatively clear, we have not examined it since we adopted the Vermont Rules of Evidence. Pursuant to V.R.E. 404(a)(1), the accused in a criminal proceeding can introduce evidence of a pertinent character trait, and when the accused does so, the prosecution can offer evidence in rebuttal. Where, as here, a character trait is not an essential element of the charge, this method of proving character is governed by Rule 405(a). That rule allows proof of character only by evidence of reputation.[1] However, it goes on to say: "On cross-examination, inquiry is allowable into relevant specific instances of conduct." The State relies solely on this authorization to support the validity of the cross-examination evidence about the alleged report of sexual acts between defendant and his son.

█ The authorization to inquire about "relevant specific instances of conduct" is solely to allow impeachment of the character witness. The rationale is addressed in the leading case of *Michelson v. United States*, 335 U.S. 469, 479 (1948). Because character is proved by reputation evidence, which is a form of hearsay, the Court noted that it was proper to cross-examine on that hearsay. It explained:

---

[1] The federal rule allows proof of character by opinion, but this part of the federal rule was not adopted in Vermont. See Reporter's Notes to V.R.E. 405. The testimony of defendant's character witnesses was given in the form of opinions without objection by the State. This deviation from the method of proof set forth in V.R.E. 405 is not relevant to the issue before us.

The prosecution may pursue the inquiry with contradictory witnesses to show that damaging rumors, whether or not well-grounded, were afloat—for it is not the man that he is, but the name that he has which is put in issue. Another hazard is that his own witness is subject to cross-examination as to the contents and extent of the hearsay on which he bases his conclusions, and he may be required to disclose rumors and reports that are current even if they do not affect his own conclusion. It may test the sufficiency of his knowledge by asking what stories were circulating concerning events, such as one's arrest, about which people normally comment and speculate.

*Id.* Because character can be proved only by reputation evidence, cross-examination based on specific acts has generally been limited to whether the witness has heard about the specific incident. *Id.* at 482.

■ The authorization to use evidence of specific instances of conduct is limited because such evidence can have a much greater impact on the jury than reputation or opinion evidence. See Advisory Committee's Note to Fed. R. Evid. 405(a) (such evidence "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time"). Thus, defendant is not authorized to use such evidence at all. The prosecution can use such evidence only in cross-examination, and, in fact, only in cross-examination of defendant's character witnesses. See 22 C. Wright & K. Graham, Federal Practice and Procedure § 5268, at 610–11 (1978). The evidence is admissible only to impeach the testimony of the character witness and not for the purpose of discrediting the defendant by showing he has a disposition to engage in the type of conduct for which he is on trial. See, e.g., *State v. Styles*, 93 Wash. 2d 173, 176, 606 P.2d 1233, 1234 (1980).

■ There is no question that the prosecutor crossed the line in this case and that the trial court allowed that line crossing. The prosecutor abandoned the notion that he was testing the witnesses' opinions of defendant's character and put as many of the details of the allegation as possible before the jury. See *Maple v. State*, 662 P.2d 315, 316 (Okla. Crim. App. 1983) (cross-examination may include details sufficient to show that same

character traits are involved but not "unnecessary or prejudicial details"). In addition, he cross-examined defendant himself on these details. See *Freeman v. State*, 486 P.2d 967, 976–77 (Alaska 1971) (cross-examination of defendant about details of prior bad act used to impeach character witness improper); 22 C. Wright & K. Graham, Federal Practice and Procedure § 5268, at 614. In sum, what started as an attempt to impeach character witnesses concluded as an attempt to show that defendant engaged in sexual misconduct in the past with his children, that the family failed to properly protect the children and that the jury should consider this in deciding whether he was guilty of the crime for which he was charged. This use was clearly intended to demonstrate a character trait related to sexual misconduct or abuse of defendant's children to prove defendant acted in conformity with that character trait in this case—a use expressly prohibited by V.R.E. 404(a). For these reasons, we agree that admission of the evidence would have been a ground for reversal if an objection had been preserved.

■ Defendant failed, however, to properly preserve the issue for review. Although defendant objected when the prosecutor disclosed his intent to cross-examine on H.M.'s report, we cannot say that the use of the report for cross-examination of character witnesses was wholly improper. The existing law allowed the prosecutor to test the effect of reports of misconduct on the opinion of the character witnesses. Defendant failed to object when the prosecutor crossed the line into impermissible uses for the report.

■ Although defendant failed to preserve an issue, reversal may still result if the error is plain. We have consistently stated that we will find plain error to warrant reversal of a criminal conviction, absent preservation, only in rare and extraordinary cases where the error so affects the substantial rights of the defendant that we cannot find the trial overall to be fair. See *State v. Duff*, 150 Vt. 329, 338, 554 A.2d 214, 219 (1988); V.R.Cr.P. 52. Application of this rule necessarily involves a degree of appellate discretion and a weighing of all the relevant factors. See, e.g., *State v. Ross*, 152 Vt. 462, 473, 568 A.2d 335, 342 (1989) (Morse, J., dissenting). On reviewing and weighing the appropriate factors, we conclude that the admission of ex-

tensive details of defendant's alleged prior misconduct amounted to plain error in this case.

First, the evidence of defendant's alleged prior conduct was highly prejudicial to the defendant. As Chief Judge Cardozo noted when he was on the New York Court of Appeals, such character evidence is a "peril to the innocent." *People v. Zackowitz*, 254 N.Y. 192, 198, 172 N.E. 466, 468 (1930). Evidence of uncharged crime creates a "grave danger of prejudice," *People v. Thompson*, 27 Cal. 3d 303, 317, 611 P.2d 883, 889, 165 Cal. Rptr. 289, 295 (1980), such that it is "the most prejudicial evidence imaginable against an accused." *People v. Smallwood*, 42 Cal. 3d 415, 429, 722 P.2d 197, 205, 228 Cal. Rptr. 913, 922 (1986). There is significant empirical evidence that such evidence can greatly increase the likelihood that jurors will find the defendant guilty of the crime for which he is charged, to the point that one commentator argues that: "Uncharged misconduct evidence effectively strips the defendant of the presumption of innocence." Imwinkelried, *The Worst Surprise of All: No Right to Pretrial Discovery of the Prosecution's Uncharged Misconduct Evidence*, 56 Fordham L. Rev. 247, 249 (1987). The prejudice from evidence of prior crimes for which defendant was not convicted may be greater than that for convictions because the jury may want to prevent the defendant from escaping punishment for the earlier crimes.

Second, the incident involved in the prosecutor's examination was investigated by SRS, and insufficient evidence was found to pursue it. In *United States v. Schwab*, 886 F.2d 509, 513 (2d Cir. 1989), the Second Circuit Court of Appeals recently held that cross-examination of a defendant about criminal charges that were dismissed or for which the defendant was acquitted is improper as a matter of law because the prejudicial effect of such evidence always outweighs the probative value. The court noted that the witness will always deny the misconduct so the only purpose is to place the charge before the jury. *Id.* Thus, there is little probative value to the evidence but the danger of prejudice, especially when the defendant is examined about the charges, is great. *Id.* For this reason, numerous courts have prohibited cross-examination of character witnesses about arrests because the charge itself does not show guilt. See, e.g., *State v. Martin*, 322 N.C. 229, 238, 367 S.E.2d 618, 623 (1988);

*Commonwealth v. Scott*, 496 Pa. 188, 196, 436 A.2d 607, 611 (1981). The prosecutor in this case was clearly inviting the jury to conclude that despite the fact that the SRS investigation turned up insufficient evidence to prosecute defendant or bring juvenile proceedings, defendant committed a sexual act on his son.

Third, the trial judge exercised little or no control to limit the evidence to its proper purpose. Such control is critical to minimize the inappropriate prejudice from such evidence. See C. McCormick, Evidence § 191, at 569 (3d ed. 1984) (extent and nature of cross-examination "demands restraint and supervision"). Recently, the Colorado Supreme Court outlined the rules for court control of impeachment of character witnesses. *People v. Pratt*, 759 P.2d 676 (Colo. 1988). The *Pratt* court concluded that the trial judge "should rule on the propriety of such cross-examination prior to any attempt at questioning." *Id.* at 685. Here, although the prosecutor briefly described the allegation to the court prior to the cross-examination, the court exercised no control over the evidence. There was no preliminary ruling that the incident happened, or that there was a sufficient showing that it happened, and that the prosecutor was acting in good faith. There was no balancing of probative value against prejudicial effect under V.R.E. 403. The court never instructed the jury on the limited purpose for which the evidence was admitted, either at the time the evidence was admitted or during the charge to the jury.

Fourth, the court's actions strongly indicated that an objection would have been unavailing. Although defendant's counsel failed to object to the questioning, many of the witnesses objected to the questions and did not want to answer them. In ordering defendant to answer questions about H.M.'s report, the court stated that because of defendant's character defense: "You have put in issue everything that you have done in your life of a sexual nature, and everything you know in terms of other people's accountings of your character in that nature." In light of that statement, it is likely that no objection from defendant would have changed the court's view that the prosecution's questions were appropriate. See *State v. Duff*, 150 Vt. at 338, 554 A.2d at 219 (in considering whether plain error is present, consider whether the court was aware of the issues although not technically preserved).

Fifth, the evidence discussed here was not an isolated incident of misuse of evidence of bad acts to impeach the character witnesses. The prosecutor cross-examined at length on an incident that occurred twelve years earlier where defendant threatened suicide with a gun to prevent his wife from leaving him. While disclosure of this incident began as legitimate cross-examination of character witnesses, it grew in importance as the prosecutor pursued the line that defendant acted in a way as to physically endanger his children. Although the children who testified all denied that they were endangered, the prosecutor cross-examined defendant at length on the incident and even offered a rebuttal witness to describe what occurred. As with the allegation that defendant sexually abused his son, the prosecutor went well beyond the limits in V.R.E. 405(a).

The prosecutor also raised other incidents to suggest continued sexual misconduct by defendant. He asked one of defendant's daughters: "Are you aware of [H.M.] having complained of someone having touched her private parts?" He asked defendant whether he had ever sexually abused H.M. There is no indication in the record of a factual basis for this accusation, and it was highly inflammatory. In his cross-examination of defendant, the prosecutor asked him whether he remembered propositioning a "Barbara Walker" in 1971 when she was nine months pregnant. There is no indication that defendant even knew a Barbara Walker or what the alleged incident, seventeen years earlier, had to do with the charges against defendant. All this evidence, with or without foundation or clear relevancy, contributed to an impression that defendant was some kind of sexual predator.

Sixth, this is a case where the evidence could have had a determinative effect on the outcome. The case could have gone either way, depending upon whether the jury believed complainant beyond a reasonable doubt or believed defendant, who testified, or could not resolve the conflict in testimony to convict. In *State v. Ross*, a sexual assault case in which this Court divided on whether an evidentiary error rose to the level of plain error, the majority relied in part on the fact that there had been a witness to the alleged sexual assault so the case did not rely only on the testimony of the child-victim. 152 Vt. at 470, 568 A.2d at 340. There are no witnesses to the alleged event in this

case; indeed, much of defendant's supporting evidence was to show that he was never alone with the complainant when the event was alleged to have occurred.

■ In summary, the court in this case erroneously admitted evidence of another alleged sexual assault on another of defendant's children, and the prosecution exploited the evidence unfairly to suggest that defendant generally committed acts of sexual misconduct on his children. In a case that depended ultimately on the credibility of defendant and the complainant, such evidence was incendiary. Because there is a substantial likelihood that defendant was convicted by this incendiary device and not by properly admitted evidence, we reverse.[2]

*Reversed and remanded.*

**Morse, J.,** dissenting.

I am not convinced that the error outlined by the Court warrants reversal in this case because the defense, as a trial strategy, may have sanctioned the error.

I disagreed with affirming a conviction for sexual misconduct with a child in *State v. Ross*, 152 Vt. 462, 473–78, 568 A.2d 335, 342–44 (1989), because I concluded that expert testimony bolstering the credibility of the victim—although not subject to an objection—was so prejudicial as to infringe on defendant's right to be tried by jury. *Id.* at 475, 568 A.2d at 343. I also concluded the error was obvious or "plain" because prior to trial the court warned the State not to allow the expert to vouch for the victim's credibility and the prosecution and defense agreed.

I shall not tarry long in this dissent because deciding a plain error issue is highly discretionary, not subject to precise delineation. I harbor no notion that my colleagues have abused their discretion in finding plain error and only dissent to express a

---

[2] Contrary to the suggestion of the dissent, we have made no assumptions about the competence of the defense here, nor have we speculated about the tactics used. As this opinion makes clear, our plain error analysis is concerned solely with the impact of error on the rights of the defendant; it is not concerned with the actions and motives of defense counsel. Obviously, the existence of a plain error doctrine indicates a preference for resolving obvious errors on direct appeal from criminal convictions, rather than going through a separate, and often duplicative, post-conviction proceeding to address the same issue.

contrary exercise of discretion in which, I trust, they find no abuse.

I certainly agree that, had defendant's counsel objected to the State's attempts at assassinating defendant's character and had the court allowed it, reversal for a new trial would justifiably follow. However, defendant's counsel was not bushwhacked by the prosecutor's strategy. Defendant was warned of the ensuing cross-examination, and numerous opportunities were available to stop the line of examination of numerous witnesses. Yet, this Court today holds in hindsight that the trial court sua sponte should have stopped the State in its tracks.

Our adversarial system of justice favors a neutral court allowing the advocates, within bounds, to try the case before it as they wish. We do not know defendant's strategy in this case, and his lack of objection may have been an intentional trial tactic. For all we know, at the time defense counsel might have welcomed the prosecutor's approach as amounting to a desperate attempt at overkill, an attempt so incendiary and contrary to prosecutorial decency as to offend the average juror. By allowing the prosecution to so proceed, the defense may have hoped the jury would reject the smear attempt, and in the rejecting, give defendant the benefit of reasonable doubt.

I appreciate the trial court's restraint from taking over the defense in this case. It was by no means apparent as the trial was unfolding where the State and defense were headed. The court's rulings can, and often do, change in the course of a trial. We should not assume that properly raised objections would have been unavailing. Hindsight always offers a more complete assessment of error and its impact, yet we are not—even in hindsight—as well situated to appreciate the prejudicial effect as a trial court or a court considering a claim of ineffective assistance of counsel.

A review of this case on appeal, however, should not on this record encompass an evaluation of whether defendant is entitled to a new trial due to ineffective assistance of counsel. Whether trial counsel for defendant demonstrated "reasonable competence" given the circumstances confronting him in preparing for trial and during trial, and to what extent defendant was prejudiced, are matters for evidentiary development during post-conviction proceedings. *State v. Davignon*, 152 Vt. 209,

222, 565 A.2d 1301, 1308 (1989); see also *State v. Gabaree*, 149 Vt. 229, 232–33, 542 A.2d 272, 274 (1988); *State v. Campanelli*, 142 Vt. 362, 366, 454 A.2d 1248, 1251 (1982). The rationale for that rule applies equally here:

> "[T]he facts can be explored and reported, with a review in this Court based on a developed record and a full evaluation of all relevant issues, rather than on the inadequate inferences of a trial transcript. . . . Furthermore, this leaves the original appellate process free to conduct its review based on the record of the trial in the customary fashion, according to settled law."

*Gabaree*, 149 Vt. at 233, 542 A.2d at 274 (quoting *State v. Durling*, 140 Vt. 491, 497–98, 442 A.2d 455, 458 (1981)).

The Court today necessarily assumes that defense counsel's acquiescence to the State's examination of defendant and his character witnesses resulted from incompetence, not a calculated exercise of trial tactics. Instead, we should heed the admonition that we are not to "'judge from hindsight whether tactical decisions are ultimately successful in determining claims of attorney competence.'" *In re Pernicka*, 147 Vt. 180, 183, 513 A.2d 616, 618 (1986)(quoting *In re Mecier*, 143 Vt. 23, 32, 460 A.2d 472, 477 (1983)).

I would affirm because if relief is warranted when trial tactics are at issue, such relief should be fashioned after an evidentiary hearing in post-conviction proceedings, not as the basis of a finding of plain error on appeal.

I am authorized to say that Justice Peck joins this dissent.