**STATE of Vermont v. Justin S. SMITH**

[992 A.2d 310]

No. 08-396

¶ 1. February 22, 2010. Defendant appeals from a judgment of conviction, based on a jury verdict, of sexual assault and possession and sale of marijuana. Defendant contends that the court erred in: (1) denying a motion for mistrial based on the erroneous admission of evidence of uncharged prior sexual misconduct; and (2) admitting certain photographs. We reverse and remand.

¶ 2. The record evidence may be summarized as follows. The victim, B.H., testified that, on March 19, 2007 she visited defendant's trailer in St. Albans, Vermont, to purchase marijuana. B.H. had known defendant for a number of years — her best friend was the sister of defendant's girlfriend — and had purchased marijuana from him on several occasions in the past. B.H. recalled that she gave

defendant money for a "nickel bag," that defendant offered to share a marijuana cigarette with her, and that she "took a couple of hits." According to B.H., defendant then stood up and pulled down her shirt, which she thought was to check for a hidden wire. However, defendant then grabbed her by the arms, pushed her down a hall and into a bedroom, forcibly removed her clothes, and pushed her onto a bed. Defendant compelled B.H. to engage in oral sex, and then raped her.

¶ 3. According to B.H., defendant thereafter acted as though "nothing [had] happened," offered her a towel, and said something to her about not telling his girlfriend. B.H. left the trailer and returned home to take her child to a prearranged play-date, where she told a friend, E.C., about what had happened. She then returned home, informed her mother and boyfriend about the incident, and went to a hospital for an examination. B.H. later contacted the police, who took a statement and had her place a number of "monitored" telephone calls to defendant, in which she attempted — without success — to elicit admissions concerning the incident. Among other witnesses, the State called defendant's girlfriend, who testified that, during a police search of her residence, defendant admitted to having sex with B.H. A police officer present during the search testified that he overheard the conversation in which defendant "stated that he had fucked up. That he had fucked [B.H.] and now she was trying to say that it was rape." The investigating officer also secretly recorded a conversation with defendant in which he suggested that any sexual intercourse with B.H. was consensual.

¶ 4. As noted, the jury returned a verdict of guilty on charges of sexual assault and possession and sale of marijuana. Defendant was sentenced to an aggregate term of ten years to life. This appeal followed.

¶ 5. Defendant contends that he was denied a fair trial by the erroneous admission of evidence of prior uncharged sexual misconduct. The claim arose out of events occurring on the first day of trial, during defendant's cross-examination of E.C., the friend to whom B.H. first reported the assault. Defense counsel informed the court that, the night before trial, she had received from the state's attorney a CD recording of the police interview of E.C. To show certain alleged discrepancies between E.C.'s trial testimony and the interview, defense counsel proposed to play the recording for the witness. The state's attorney had no objection and accordingly played the CD in open court up to a certain point, when he abruptly stopped it in mid-recording. The court then observed that the recording was "getting into" certain objectionable areas, referring to E.C.'s clearly audible statement that B.H. had discussed "the fact that [defendant] was molesting [his] wife or girlfriend's daughter." Shortly thereafter, E.C. repeats the allegation, recalling that B.H. "had also mentioned that [defendant] had raped or molested his wife or girlfriend's daughter."

¶ 6. A bench conference followed, in which the state's attorney requested a cautionary instruction and defense counsel moved for a mistrial. The court denied the mistrial motion on the basis that the recording had been "admitted by agreement," but invited defense counsel to comment on the prosecutor's request that it direct the jury to ignore the last part of the recording. Defense counsel declined to join in the request and renewed her motion for a mistrial, which the court again denied. The court then instructed the jury that the "last portion of the recording . . . was not meant for you to hear" and that it should "ignore that last statement that was made." The court further informed the jury that it would review the balance of the CD outside the presence of the jury and "figure out if

there's anything else on there that we don't want you to hear."[1]

¶ 7. The court and counsel then listened to the rest of the recording and identified two additional statements by the witness alluding to B.H.'s allegation that defendant had sexually assaulted his girlfriend's daughter. Although the state's attorney suggested that they refrain from playing the CD, the court agreed with defense counsel that they would "have to continue it now because we started it for the jury" and that the two statements in question would "need to be excluded."[2] The jury then returned, the court explained that they would hear the balance of the CD except for certain "objectionable material," and the CD was played in open court. Although defense counsel then completed her cross-examination of E.C. without further incident, a subsequent bench conference reveals that one of the additional "objectionable" statements was inadvertently played, thus bringing to three the number of references to defendant's alleged molestation of his girlfriend's daughter heard by the jury.[3] Defendant renewed his motion for a mistrial the following the day, which the court denied.

¶ 8. It is against this factual backdrop that we consider defendant's claim of unfair prejudice. Preliminarily, however, we note that — while the record discloses the CD was played at defendant's request — the State agreed at oral argument that defendant did not "invite" the error or waive the claim as a matter of law. We agree. As we have explained, "[t]he invited error doctrine, which applies in both civil and criminal cases, is a branch of the doctrine of *waiver* by which courts prevent a party from inducing an erroneous ruling and later seeking to profit from the legal consequences of having the ruling set aside." *State v. Longe*, 170 Vt. 35, 39 n.*, 743 A.2d 569, 572 n.* (1999) (emphasis added) (citation and quotation omitted).

---

[1] The court's instruction in its entirety was as follows:

> That last portion of the recording before Mr. Lavoie rushed to turn it off I think the attorneys forgot that that part was on there and it was not meant for you to hear. I'm not going to try to rephrase it or restate it but I want you to ignore that last statement that was made. And what we're going to do is we're going to send you back to the jury room, we're all going to listen to the rest of this and figure out if there's anything else on there that we don't want you to hear. So that will take just a few minutes I think but again don't discuss the case among yourselves.

[2] The prosecutor also subsequently suggested that they play the CD for the witness outside the presence of the jury, and that defense counsel then cross-examine her about the two alleged discrepancies between her statement to the police and her trial testimony. The court did not address this additional suggestion.

[3] The bench-conference colloquy was as follows:

> Mr. Lavoie: How are you doing? Blame her.
>
> The Court: I blame myself for being stupid.
>
> Ms. Shingler: I blame John for not having a transcript.

The parties agree that the subject of discussion was the inadvertent playing of the third statement alluding to defendant's alleged assault of his girlfriend's daughter.

Accordingly, we find no basis to conclude that defendant "invited" the error.[4]

¶ 9. The State further acknowledged at oral argument that, standing alone, the multiple references to defendant's prior sexual misconduct with his girlfriend's daughter would constitute plain error. We need not dwell, therefore, on the prejudice to a defendant's right to a fair trial that may result from evidence of prior sexual misconduct, which we have described as "the most prejudicial evidence imaginable" because of its significant potential to alter the jury's deliberative calculus. *State v. McCarthy*, 156 Vt. 148, 155, 589 A.2d 869, 873 (1991) (citation omitted).

¶ 10. The question before us is not whether defendant was prejudiced by the erroneous admission of the evidence, therefore, but whether other factors allow us to conclude beyond a reasonable doubt that the error was harmless. *State v. Lipka*, 174 Vt. 377, 384, 817 A.2d 27, 33 (2002) (we may uphold a criminal conviction "if we find that the error was harmless *beyond a reasonable doubt*"). The State relies principally, in this regard, on the cautionary instruction which the court

gave to the jury after the first two statements were heard. Even under a plain-error standard, however, we are compelled to conclude that the instruction was patently inadequate to negate the potential prejudice inherent in the offending statements. Although the court understandably did not wish to repeat the statements, its limiting instruction was so vague as to be pointless. The instruction was given several minutes after the recording was played and referred simply to "that last portion" and "that last statement" on the recording although the objectionable statements were multiple and were not actually the witness's last remarks. Moreover, the instruction provided no clear and specific direction to the jury, by instructing, for example, that defendant was not on trial for any actions other than those specifically charged and that under no circumstances was the jury to consider for any purpose the inadvertent allusions to defendant's alleged misconduct. Cf. *State v. Laprade*, 2008 VT 83, ¶ 9, 184 Vt. 251, 958 A.2d 1179 (court's limiting instruction concerning prior bad acts directed the jury that "[o]ne, you cannot use the evidence to conclude that the defendant is a bad person or a person of bad character, and two, you cannot use the evidence to conclude that . . . he assaulted [the victim] on this occasion"); *State v. Hendricks*, 173 Vt. 132, 140, 787 A.2d 1270, 1276-77 (2001) (rejecting a claim that a limiting instruction regarding prior bad acts was inadequate where the court explained, inter alia, that "[y]ou should distinctly understand that the Defendant is not on trial for any actions other than the charged offense"); see generally J. Dinse et al., Vermont Jury Instructions: Civil and Criminal § 5.30, at 5-63 (1993) (setting forth a model instruction for prior wrongs informing the jury that it "may not consider such evidence as tending to show that [defendant] has a certain character and that he acted in conformity with that character in commit-

---

[4] Although the State agreed at oral argument that the claim was waived, it continued to urge the relevance of the fact that the evidence was introduced by defendant. We can only make sense of this as an argument for applying a plain error standard, since defendant's inadvertence in admitting the evidence was essentially the affirmative equivalent of a negligent failure to object. See, e.g., *United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1183 (10th Cir. 2009) (explaining the basic distinction between invited error, which bars review where a party "deliberately considers an issue and makes an intentional decision to forego it," and plain error, which is subject to review when a party through neglect "fail[s] to make a proper objection").

ting the alleged crime" or that it was "more probable that he committed the alleged offense for which he is now on trial").

¶ 11. Any residual value in the court's limiting instruction was undermined, moreover, when it played the balance of the recording containing the third reference to defendant's prior sexual misconduct immediately *after* informing the jury that it had removed "anything else . . . that we don't want you to hear." The implication, of course, was that the balance of the recording, including the additional reference, was unobjectionable. We thus find no reliable basis to conclude that the jury was clearly informed of, or properly understood, the imperative to ignore the statements. The instruction did not, in short, mitigate the prejudice.

¶ 12. Apart from the prejudicial effect of the offending evidence, the most important factor we employ in the harmless error equation is "the strength of the prosecution's case without the offending evidence." *Lipka*, 174 Vt. at 385, 817 A.2d at 34. While there was ample evidence here of fresh reports by the victim after the incident, and a reasonably detailed statement to the police, the State's case essentially rested on a credibility contest. Apart from the victim's statements and testimony, there were no witnesses or other evidence to corroborate the sexual assault. Defendant did not testify, but nevertheless adduced evidence in which he admitted the sexual encounter but claimed that it was consensual. A series of police-monitored telephone calls from the victim to defendant yielded no damaging admissions. There were also some discrepancies in the testimony of the victim, who acknowledged that her purpose in visiting defendant's home was to buy marijuana, and that she shared a marijuana cigarette with defendant before the disputed encounter.

¶ 13. We cannot avoid the conclusion, therefore, that the evidence of defend-

ant's prior sexual molestation of a child could have affected the verdict in this case, which essentially turned on the credibility of the accuser and the accused. See *McCarthy*, 156 Vt. at 157, 589 A.2d at 875 (finding that erroneous admission of defendant's prior sexual misconduct was not harmless where the "case could have gone either way, depending upon whether the jury believed complainant beyond a reasonable doubt or believed defendant"). Although objections were not timely raised at every point below, the inherently inflammatory nature of the offending evidence in a case that turned principally on credibility renders this the relatively rare case in which "the error so affects the substantial rights of the defendant that we cannot find the trial overall to be fair." *Id.* at 154, 589 A.2d at 873. Accordingly, we conclude that the judgment must be reversed.

¶ 14. For the guidance of the court in the event of a retrial, we address defendant's additional argument that the trial court erred in admitting several photographs. The issue requires no extended discussion. The victim testified that defendant's penis appeared to be either uncircumcised or surrounded by "a lot of skin," and the State offered several photographs of defendant's genitalia to corroborate the testimony. Defendant objected that the photographs were irrelevant and prejudicial. The State acknowledged that defendant admitted having sexual intercourse with B.H. so that identity was not at issue. Under the circumstances, therefore, we agree with defendant that the photographs were not material to any disputed issue, and should not have been admitted. *State v. Lee*, 2005 VT 99, ¶ 8, 178 Vt. 420, 886 A.2d 378 (to be relevant and admissible, evidence must make "the existence of a fact that is 'of consequence to the determination of the action' more probable than not" (quoting V.R.E. 401)).

*Reversed and remanded.*