2014 VT 98

## State of Vermont v. Daniel C. Pettitt

[104 A.3d 85]

Nos. 12-442 & 13-115

Present: **Reiber, C.J., Dooley, Skoglund and Crawford, JJ., and Zimmerman, Supr. J. (Ret.), Specially Assigned**

Opinion Filed August 8, 2014

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, *Joshua S. O'Hara*, Appellate Defender and *Eric Morgan*, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

¶ 1. **Dooley, J.** Defendant appeals from a jury verdict that he violated a temporary relief-from-abuse order and also violated conditions of release imposed in an earlier criminal case. Defendant raises two unrelated questions for review.[1] First, he challenges the denial of his motion for mistrial. Second, he challenges the validity of one of his probation conditions. We address and affirm each issue in turn, but remand for the trial court to consider the parties' stipulation as to defendant's sentence.

I.

¶ 2. Defendant was charged with two counts arising from the same alleged incident: (1) violation of a term of a relief-from-abuse (RFA) order that required him to remain at least three hundred feet from his girlfriend and her residence and (2) violation of a condition of release from an earlier criminal charge that prohibited him from contacting his girlfriend. The State alleged that on February 2, 2012, defendant went to his girlfriend's house and made contact with her. The trial began with the introduction of the documents reflecting the requirements that defendant was alleged to have violated — the conditions of release from the earlier criminal case and the findings, conclusions and order in the RFA case. The trial included three witnesses whose testimony was important to the first issue: defendant, his girlfriend, and a third

---

[1] Defendant originally raised another issue involving his sentence, but the parties have agreed to a resolution of that issue, and it is no longer before us. As we state in the text, the trial court has to consider the stipulation of the parties. See *infra*, ¶ 20.

person who lived in the same house as the girlfriend. The girlfriend and the third person testified that defendant went to the girlfriend's house and made contact with her. Defendant testified that he did not go to the house. Whether defendant was present at the girlfriend's house was the central issue of the trial.[2]

¶ 3. ▮ Defendant challenged the credibility of both the girlfriend and the third-party observer, and the cross-examination of the girlfriend produced the evidentiary incidents that underlie the first issue on appeal. Defense counsel attempted to cross-examine the girlfriend about her mental health and alcohol use, and she gave answers that defendant argues are irrelevant and so prejudicial as to require a new trial. The girlfriend's testimony included the following exchange:

> Defense counsel: You have, and I don't mean any disrespect, I hope you will understand this, but you suffer from PTSD, is that right?
>
> State: Objection, Your Honor.
>
> Court: Overruled for now, but we'll see where this goes.
>
> Girlfriend: Are you kidding me? Like why are you doing this?
>
> Defense counsel: Well, I mean it's cross-examination. I don't need to give a reason.
>
> Girlfriend: Will you refresh my mind why did I put that restraining order on him January 22nd? Was that the night he tried to shoot me? He got pulled over with a loaded gun in his truck.
>
> State: Judge, I'm going to object at this point.
>
> Court: Yes, I think that's warranted.

The State — not the defense — made the only objection, and the court apparently sustained the objection.[3] Defendant did not ask

---

[2] Defendant also challenged the State's proof of service of the RFA order, but that element is not relevant to the mistrial ruling at issue here.

[3] It is unclear what the prosecutor was objecting to and also unclear whether the court made a definitive ruling on the objection. In any event, the testimony came into evidence before there was any ruling, so the proper motion was to strike it. See V.R.E. 103(a)(1). This motion must be timely made. See *State v. Kinney*, 171

for a curative instruction or to strike the testimony. After the defense counsel resumed questioning, the girlfriend again answered beyond the scope of the question:

Defense counsel: You have drinking issues?

Girlfriend: No.

Defense counsel: You did February 2nd?

Girlfriend: I was drinking, yes, because [defendant] was cheating on me and abusing me. I did drink.

Defendant then moved for a mistrial. The court denied the motion and stated that the girlfriend's responses were "invited error." Again, defendant did not ask the court to strike the testimony or for a curative instruction. Both the State and the defense referenced the girlfriend's statements in their closing arguments. After the jury verdict, defendant moved for judgment of acquittal or new trial, which was denied.

¶ 4. Defendant argues the court abused its discretion by not granting a mistrial because the girlfriend's comments were too prejudicial. Specifically, defendant argued that the girlfriend's evidence violated Vermont Rule of Evidence 404(b) because it was "[e]vidence of other crimes, wrongs, or acts [offered] . . . to prove the character of a person in order to show that he acted in conformity therewith." In support of the relief defendant seeks, he contends that the State's trial strategy rested upon the credibility of the girlfriend. He claims that the State had no other evidence apart from the girlfriend's testimony, nor any reliable corroboration of her story, and that the State relied upon the girlfriend's unresponsive testimony in its closing statement. He notes that the jury asked for a read-back of the entire testimony of the girlfriend,

Vt. 239, 253, 762 A.2d 833, 844 (2000). In this context and despite the vague objection of the prosecutor and ruling of the judge, we conclude that defendant had to make a motion to strike to preserve an objection to the girlfriend's testimony. Whatever ruling the judge made, it did not include a specific direction that the jury could not consider the testimony of the girlfriend.

Because defendant made no motion to strike, we review the introduction of the initial nonresponsive testimony only for plain error. *Id.* Clearly this testimony was the most prejudicial. Nevertheless, defendant has argued his mistrial claim as arising from the second incident of nonresponsive testimony and the cumulative effect of both. In light of defendant's position, the discussion in the text assumes that defendant's argument is fully preserved.

showing what importance they placed upon it.[4] He argues that he needed to test the girlfriend's credibility to successfully challenge the State's case and that her nonresponsive and prejudicial answers should have been subject to a curative instruction. Thus, he argues that the testimony was not invited error, but unresponsive answers to proper questioning.

¶ 5. On these bases, he argues that the denial of his motion for a mistrial was an abuse of discretion and reversible error. He further argues that the court's failure to grant lesser relief, such as a curative instruction, was plain error.

¶ 6. ■ We review the denial of a motion for mistrial for abuse of discretion. *State v. Messier*, 2005 VT 98, ¶ 15, 178 Vt. 412, 885 A.2d 1193. We will find error "only where the trial court's discretion was either totally withheld, or exercised on clearly untenable or unreasonable grounds." *Id.* We will reverse the trial court's ruling only if it "appear[s] affirmatively that a denial of the motion has resulted in prejudice to the moving party, with the burden of proof being on the movant." *State v. Covell*, 142 Vt. 197, 199, 453 A.2d 1118, 1119 (1982). Prejudice, in turn, "depends on the facts and circumstances of each case, and therefore we review the denial of the motion [for mistrial] within the context of the entire proceedings." *State v. Gemler*, 2004 VT 3, ¶ 16, 176 Vt. 257, 844 A.2d 757. We have held that "[t]he trial court is in the best position to assess whether any comment, in the context of the trial before it, is prejudicial enough to warrant a new trial." *State v. Boglioli*, 2011 VT 60, ¶ 24, 190 Vt. 542, 26 A.3d 44 (mem.) (quotation omitted), *overruled on other grounds by State v. Bolaski*, 2014 VT 36, ¶ 47, 196 Vt. 277, 95 A.3d 460.

¶ 7. In this case, there was a significant question as to whether the nonresponsive testimony of the girlfriend was sufficiently prejudicial to warrant a new trial. The jury had before it the RFA findings as well as the conditions of release in the apparently related criminal case against defendant.[5] The RFA findings stated that defendant had abused the girlfriend, caused physical harm, placed her in fear of imminent serious physical harm and "[t]here

---

[4] The read-back occurred, but only up to the point of the testimony on which the motion for mistrial was based.

[5] The criminal case was apparently related to the RFA proceeding because the condition of release prevented defendant from having contact with the girlfriend and the third person who lived in the same house as the girlfriend.

is an immediate danger of further abuse." The order included a requirement that defendant "not possess any weapons or firearms." We agree with defendant that the girlfriend's nonresponsive testimony provided irrelevant, prejudicial evidence that should not have reached the jury. It was more specific than the general abuse findings made in the RFA order. On the other hand, the testimony was entirely consistent with those findings. While the accusations may have suggested a character trait for violent behavior, the crime before the jury was not one involving violent behavior. We conclude that the trial judge could determine in this instance that the degree of prejudice was not sufficient to require a mistrial, and we affirm the decision as within the court's discretion.

¶ 8. ■ In reaching this conclusion, we recognize defendant's argument that the State had a weak case and the girlfriend's credibility was central to the jury's consideration of the charges. In fact, the State had the additional eyewitness testimony of the third-party observer. Defendant had no alibi witness and notably did not call his mother to testify — the person who apparently was with him that morning and, according to the girlfriend, drove him to the girlfriend's house. We cannot agree that the State's case was so weak that the weight of the nonresponsive testimony was obviously controlling.

¶ 9. There is another reason for our conclusion. We have held, in previous rulings on mistrial motions, that any potential prejudice to the defendant could be reduced in large part by the court's prompt issuance of a curative instruction. E.g., *State v. Mears*, 170 Vt. 336, 346, 749 A.2d 600, 607 (2000). Where the defendant failed to request a curative instruction, however, or refused the court's offer to give one, we found that choice to be significant in our determination that the trial court did not abuse its discretion in denying a motion for mistrial. See *State v. Turner*, 145 Vt. 399, 403-04, 491 A.2d 338, 340-41 (1985) (refusing court's offer of a curative instruction); *State v. Williams*, 143 Vt. 396, 408, 467 A.2d 667, 673 (1983) (failing to request a curative instruction).

¶ 10. We noted in Turner that "defense counsel bears some responsibility to inform the court if he or she feels corrective action is necessary in order to cure an error." 145 Vt. at 403, 491 A.2d at 340. We reasoned:

If this Court were indiscriminately to entertain claims of error which defense counsel expressly — perhaps, strategically — declined to pursue before the trial court, it would encourage counsel, at times when correction is simple, to convey the impression that all is well while preparing to seek reversal in the event of an adverse verdict.

*Id.* at 403-04, 491 A.2d at 340-41.

¶ 11. ■ The same principle applies to this case. Defendant did not timely object to the girlfriend's first nonresponsive answer, which was the most prejudicial. More importantly, defendant did not seek a remedy for the prejudicial testimony — either an order to strike the testimony or a special curative instruction to the jury or both. In our view, this is the kind of case where a separate instruction to the jury to not consider the testimony was warranted to respond to the kind of prejudice that might have arisen. It was defense counsel's obligation to request that instruction.

¶ 12. We recognize that the trial court's characterization of the girlfriend's testimony as invited error was an exaggeration. See *State v. Smith*, 2010 VT 15, ¶ 8, 187 Vt. 600, 992 A.2d 310 (mem.) (explaining that invited error requires an inducement of an erroneous ruling followed by an attempt to profit from the legal consequences of having the ruling set aside). It was, however, understandable. Defense counsel was the only person who knew that he was intending to go on to a new series of questions that were likely to produce responses from the girlfriend similar to the earlier nonresponsive testimony. Yet, defense counsel never asked that the girlfriend be instructed to answer only the question and not volunteer additional information. The judge was unaware of the need for such an instruction. Defendant requested a mistrial but not a curative instruction after the girlfriend's second nonresponsive answer, which was not especially prejudicial. The trial court did not abuse its discretion in denying this request.

## II.

¶ 13. The second issue defendant raises on appeal is whether one of his probation conditions is overly broad and therefore invalid. The relevant facts are as follows. Defendant's first sentencing hearing was on November 29, 2012. After hearing testimony regarding defendant's efforts to improve his own behavior,

the court sought probation conditions that would be rehabilitative. To that end, defense counsel requested home-confinement furlough pursuant to 28 V.S.A. § 808b, noting that it was important that defendant be "very well monitored." For the violation of the RFA order, the court sentenced defendant to six to ten months, all suspended with three months to serve on home-confinement furlough. For the violation of conditions of release, he was further sentenced to two to six months, all suspended with probation, to be concurrently served with the other sentence.

¶ 14. When defendant reported to a correctional center in order to begin his home-confinement furlough, the Department of Corrections (DOC) confined him instead of furloughing him. Defendant moved for emergency relief, and the trial court stayed defendant's sentence pursuant to Vermont Rule of Criminal Procedure 38(a), effectively releasing him, and ordered sentence reconsideration pursuant to Criminal Rule 35.

¶ 15. At the sentence reconsideration hearing on January 17, 2013, the court removed the home-confinement furlough condition and replaced it with a work-crew condition, based on the court's understanding that DOC would follow that direction. At the same time, the court added a condition that if defendant was no longer able to live at his parents' address, 68 US Route 2 in Grand Isle, then the probation officer had to approve where defendant would live while serving his probation. The condition reads: "Def[endant] to reside at 68 US Route 2; any change in residence must be approved in advance by the [probation officer]." Along with other alterations, the court changed the suspended sentences from running concurrently to consecutively, increasing the total length of the sentence.[6] Defendant did not object to the sentence at the sentencing hearing, but later moved to reconsider sentencing.

¶ 16. Defendant argues that the added condition restricting his place of residence is overbroad and unduly restrictive, relying upon *State v. Freeman*, 2013 VT 25, ¶¶ 15-17, 193 Vt. 454, 70 A.3d 1008. He argues that, as in *Freeman*, his probation condition affords too much discretion to his probation officer in the event that he is no longer able to live at his parents' address.

¶ 17. Defendant concedes that we review his unpreserved objection to his probation condition for plain error only. The

---

[6] The parties have now stipulated that the trial court was without authority to impose this increase in sentence. See *infra*, ¶ 20.

standard for finding plain error is high: "(1) there must be an error; (2) the error must be obvious; (3) the error must affect substantial rights and result in prejudice to the defendant; and (4) we must correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *State v. Herrick*, 2011 VT 94, ¶ 18, 190 Vt. 292, 30 A.3d 1285. Even if the objection had been preserved at the hearing, however, we find the condition to be valid and therefore affirm.

¶ 18. In *Freeman*, the defendant's sentence included several special conditions, one of which was: "Def[endant] shall reside/ work where [probation officer] or designee approves. Def[endant] shall not change residence/employment without prior permission of [probation officer] or designee." 2013 VT 25, ¶ 6. We found the condition in *Freeman* to be "overbroad and unduly restrictive given the lack of findings tying the broad condition to the offenses for which [the] defendant was convicted." *Id.* ¶ 15. In so holding, we relied on *State v. Moses*, in which we found that a similar condition was too restrictive of a probationer's liberty and autonomy, "was 'not fine-tuned to the specific rehabilitative and preventative goals applicable' " to the case, and therefore delegated excessive authority to the probation officer to dictate where the defendant lived. *Freeman*, 2013 VT 25, ¶ 16 (quoting *State v. Moses*, 159 Vt. 294, 300-01, 618 A.2d 478, 482 (1992)).

¶ 19. ██ █ The present case is distinguishable from *Freeman*. Defendant's condition, unlike those at issue in *Freeman* or *Moses*, indicates that defendant should live at the specific address of his parents' home unless unable to do so, and only then would the probation officer be able to determine an alternative. This condition was imposed as a means of replacing the home-confinement furlough which the DOC would not implement. The home-confinement furlough in turn was sought by defendant and was imposed after the court found that defendant functioned best while supervised and working. The court's decision to require defendant to reside at a specific address was therefore related to the rehabilitative purpose of keeping defendant near the supervision of his family and his employer.[7] Unlike *Freeman* and *Moses*,

---

[7] Defendant has argued that the condition does not serve the rehabilitative goal because it requires defendant to live at a particular address and not with his parents if they were to move. We conclude that defendant is seeking unnecessary fine-tuning.

the condition here is "fine-tuned to the specific rehabilitative and preventative goals applicable to this case." *Moses,* 159 Vt. at 301, 618 A.2d at 482; see *State v. Rivers,* 2005 VT 65, ¶ 9, 178 Vt. 180, 878 A.2d 1070 (stating that probation conditions are reasonable if they are not unnecessarily harsh or excessive in serving two goals: (1) to protect the public from a recurrence of the crime that resulted in the imposition of probation and (2) to aid the probationer in leading a law-abiding life); see also 28 V.S.A. § 252(a) (requiring that probation conditions be what the court deems "reasonably necessary to ensure that the offender will lead a law-abiding life or to assist the offender to do so"). We conclude that the condition is related to defendant's rehabilitation and founded upon sufficient findings and therefore we uphold it.

¶ 20. Defendant raised another issue on appeal related to the modified sentences the court imposed after the DOC rejected home confinement. The issue was settled by a stipulation of the parties. We therefore remand for the trial court to consider the stipulation.

*Affirmed as to the motion for mistrial and the validity of defendant's probation condition. Remanded for the trial court to consider the parties' stipulation regarding the sentence imposed.*