NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 47

No. 2015-100

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, Criminal Division |
| | |
| Owen Cornell | January Term, 2016 |

David A. Howard, J.

Erica A. Marthage, Bennington County State's Attorney, and Christina Rainville, Chief Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, and Rebecca Turner, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.   **DOOLEY, J.**  Defendant, a convicted sex offender, appeals the imposition of six probation conditions ordered by the sentencing court.  Defendant contends four of the conditions—that he reside or work where his probation officer approves, attend counseling programs ordered by his probation officer, refrain from violent and threatening behavior, and avoid areas where children congregate—have already been deemed unlawful by this Court and should be struck down.  He further argues that the remaining two conditions—giving his probation officer warrantless search and seizure privileges and banning home computer and internet usage—impose unduly restrictive and invasive terms that infringe upon defendant's liberty, privacy, and autonomy rights.  We agree with defendant as to the residence and

employment, counseling, search and seizure, and home computer and internet use conditions, and remand to the sentencing court for further justification, amendment, or elimination. We affirm the imposition of the conditions prohibiting violent or threatening behavior and restricting access to areas where children congregate.

¶ 2. Defendant was convicted of lewd and lascivious behavior with a twelve year old boy in 2013 and sentenced to two to six years in prison, with all suspended except for twenty months with credit for time served. The court also imposed multiple probation conditions. Defendant appealed these conditions to this Court, arguing that the "boilerplate" restrictions were not sufficiently individualized, violated his due process rights on account of their vagueness and ambiguity, impermissibly delegated court authority to his probation officer, and were unduly restrictive and invasive in violation of substantive due process. State v. Cornell, 2014 VT 82, ¶ 1, 197 Vt. 294, 103 A.3d 469. Although defendant had already raised these issues at the trial court level in response to a limited remand from this Court, the court did not address them, stating its authority was "limited to clarifying the conditions it had already imposed" and advising that defendant's remedy "lies in his appeal." Id. ¶¶ 1, 5. However, we determined that the motion to reconsider the imposed conditions was properly before the court and remanded in order that the court could "resolve defendant's challenges." Id. ¶ 1.

¶ 3. On remand, the court took testimony from defendant's probation officer and considered defendant's supplemental filings, in which he proposed alternative conditions. On January 26, 2015, the court issued an order replacing the probation conditions that had been previously ordered. The order imposed twenty-one probation conditions, including, over defendant's objections, the following:

> 8. If the probation officer or the court orders you to go to any counseling or traiing (sic) program, you must do so. You must participate to the reasonable satisfaction of the probation officer.
>
> . . .

2

10. Violent or threatening behavior or conduct is not allowed at any time.

. . .

15. You shall not purchase, possess, or use pornography or erotica of minor children. You may not access or loiter or go to places where children are known to congregate, including parks, playgrounds, elementary, or high school grounds, unless approved in advance by your probation officer or designee.

16. You are required to give your probation officer or designee search and seizure privileges to search without a warrant and confiscate if necessary illegal drugs, pornography or erotica of minor children, digital media, computers, or any other item which may constitute a violation of your probation terms.

. . .

18. You must not own or possess a computer at your residence and you may not access the internet at your place of employment or anywhere else unless approved in advance by your probation officer or designee. You will allow your probation officer or designee to monitor your computer/internet usage, including through the use of specific software for monitoring sex offenders. You will also pay any reasonable charge associated with this.

19. You shall reside/work where your probation officer or designee approves.

¶ 4.    On March 4, 2015, the court conducted a third hearing and made oral findings in support of the January 2015 probation order. Defendant's timely appeal, filed after the court's findings and probation conditions were issued, followed.

¶ 5.    On appeal,[1] defendant argues (1) that conditions 8, 10, 15, and 19 have already been deemed unlawful and should not have been imposed; and (2) that conditions 16 and 18 impermissibly infringe on defendant's liberty, privacy, and autonomy rights, as guaranteed by

_____

[1] In its brief to this Court, the State has asked us to take judicial notice of the November 13, 2015 Decision of Violation of Probation. We deny this request. The circumstances addressed in that decision are based on alleged facts that were not before the trial court at sentencing and as such, are immaterial to this appeal.

the United States and Vermont Constitutions, and were imposed without connection to defendant's offense or rehabilitation.[2]

¶ 6. A sentencing court has authority to establish probation conditions that are reasonably related to the crime committed and have been deemed necessary to "ensure that the offender will lead a law-abiding life." 28 V.S.A. § 252(a). Probation conditions may not be "unduly restrictive of the probationer's liberty or autonomy." State v. Whitchurch, 155 Vt. 134, 137, 577 A.2d 690, 692 (1990) (quotation omitted). "Although the trial court has discretion in determining appropriate conditions of probation, we are required to find error where . . . discretion has been exercised to a clearly unreasonable extent." State v. Moses, 159 Vt. 294, 297, 618 A.2d 478, 480 (1992) (citation omitted).

¶ 7. Before considering defendant's specific challenges, we make one general observation. At sentencing, the State repeatedly took the position that the probation conditions were necessary for all sex offenders and had been developed and drafted specifically for this purpose. The witness that the State provided, however, was a local probation officer who apparently had no part in formulating the conditions and was not an expert on the State's general-need proposition. His testimony often fell back on the general proposition that a condition was needed because defendant is a sex offender, with no attempt to tie the specific condition to defendant's individual circumstances and no support for the general proposition. We note here the language of 28 V.S.A. § 252(b)(18): a court "shall not impose a condition prohibiting the offender from engaging in any legal behavior unless the condition is reasonably related to the offender's rehabilitation or necessary to reduce risk to public safety." (emphasis

---

[2] Defendant's third argument, that the sentencing court failed to meet the requirements of 28 V.S.A. § 252(c), was withdrawn after the court signed the January 27, 2015 probation order, rendering the issue moot.

added). At a minimum therefore, the statute requires more than the bare recitation that a defendant is a sex offender and that incursions onto his liberty are justifiable on that basis alone.

¶ 8. We can quickly address condition 19 and so consider it first. Defendant challenges a condition that states "[Y]ou shall reside/work where your probation officer or designee approves," on the grounds that this issue has already been determined by State v. Freeman, 2013 VT 25, 193 Vt. 454, 70 A.3d 1008. In that case, we held that the imposition of a near-identical condition[3] "[w]ithout any findings indicating the necessity of such a broad condition in this particular case" was plain error. Id. ¶ 17. Defendant argues that the sentencing court's findings in this instance were insufficient to justify the imposition of this broad condition. We agree.

¶ 9. Although the State distinguishes this case from Freeman on the grounds that the court in this instance made "specific findings" to justify the condition, we believe the findings, and the evidence on which they were made, are so sparse as to be effectively absent. Here, there was evidence from defendant's probation officer and findings based on that evidence. In the hearing on probation conditions held December 3, 2014, defendant's probation officer testified that condition 9 was necessary because officers "want to make sure [defendant is not living] near a school, a daycare center, where minors might be present" and ensure that "he's not working at a place . . . like a video shop or something like that or . . . a toy store or places which mainly is a theme for children." In a March 4, 2015 hearing held specifically to permit the court to "put on the record its reasoning and explanation for probation conditions that it had imposed," the trial judge proffered the following to justify condition 19:

> [W]e feel that's appropriate as long as it's kind of understood that
> there's sort of a reasonable [intent] to that. That a probation
> officer could not just randomly, without any reasonable grounds

---

[3] Condition 40 in Freeman stated "Def shall reside/work where PO or designee approves. Def shall not change residence/employment without prior permission of PO or designee." 2013 VT 25, ¶ 6.

say someone couldn't work somewhere or reside somewhere, but with the reasonableness standard, assume that it would be important to be able to restrict residence so that it would not be in a situation where minors might be easily contacted.

And work, . . . that there has to be some ability for the probation officer to decide that some work that might involve youthful children or something could be restricted.

¶ 10. We deem these findings insufficient under Freeman for two reasons. First, the trial judge's statements constrain the condition only insofar as they impose a general—and assumedly pre-existing—reasonableness requirement; they do not reflect a narrow tailoring, based on specific facts about defendant's history, offense, or future risk, that indicates the need for such a broad condition "in this particular case." Freeman, 2013 VT 25, ¶ 17 (emphasis added). The recent case of State v. Campbell demonstrates this point in addressing essentially the same condition with respect to place of employment. 2015 VT 50, __ Vt. __, 120 A.3d 1148. In that case, the trial judge, based on reasoning similar to that of the trial judge in this case, added to the condition that approval not be unreasonably withheld. We held that the reasonableness requirement was not enough to save the condition because "it does nothing to appropriately guide defendant's probation officer's decision-making process as it relates to defendant's proposed locations of employment." Id. ¶ 29. We found it was not sufficiently "fine-tuned to the specific rehabilitative and preventative goals" in the case. Id. (quotation omitted). To the extent that the trial judge's remarks added a general reasonableness requirement, it is not sufficient under Campbell.

¶ 11. Second, we find the deficiency in the evidence and the findings to be similar. The probation officer testified that the concern about the place of defendant's employment or residence was whether the location was close to areas where significant number of children will be. Rather than seeking a probation condition related to the specific concern and related to this defendant, the proposed condition was broad and general, apparently sought for all sex offenders

6

irrespective of the nature of the criminal conduct. The trial court's acceptance of the proposed condition again relied on the rationale that the condition had to keep defendant away from children but did not explain why such a broad and general grant of control to the probation officer was justified.

¶ 12.    The evidence and rationale in this case is far different, and much weaker, than the evidence and rationale in the one decision that has found adequate justification for a broad approval requirement for residence location, State v. Petitt, 2014 VT 98, 197 Vt. 403, 104 A.3d 85.  In Petitt, the trial court found that defendant would do best if he was supervised and working.  For this reason, the condition was designed to ensure that, unless he was unable to do so, defendant lived with his parents. Id. ¶ 19.  We concluded that the residence requirement was "sufficiently fine-tuned to the specific rehabilitative and preventative goals" in the case. Id.

¶ 13.    While we acknowledge the State's argument that it would be unfair to expect a court to "predict all of the possible risks that can develop," and craft an itemized list of prohibited places of residence or work accordingly, we also recognize that where fundamental rights are involved, "special care should be used to avoid overbroad or vague restrictions." Whitchurch, 155 Vt. at 137, 577 A.2d at 692 (citation omitted).  As we concluded in Campbell, 2015 VT 50, ¶ 26, we find here that the court could craft a narrower condition that anticipated future issues while still providing flexibility.  Indeed, the three other conditions that the court imposed dealing with contact with children[4] demonstrated that reality.  We therefore strike condition 19 and remand the matter for additional justification, revision, or removal.

¶ 14.    We turn next to condition 8, which requires a defendant to attend any counseling or training program ordered by their probation officer or the court.  Defendant argues that this

_____

[4]  The three are conditions 15, 16, and 21.  They state that defendant cannot go to places where children are known to congregate, cannot have contact with males under the age of sixteen, and cannot work or volunteer for any organization that primarily provides services to persons under the age of sixteen.

Court has already decided this question in State v. Putnam, ruling such a condition unlawful on the grounds that it delegated impermissible "open-ended authority" from the trial court to a probation officer. 2015 VT 113, ¶ 71, __ Vt. __, 130 A.3d 836 (quotation omitted). We agree and remand.

¶ 15. In Putnam, we considered an identically-worded probation condition imposed upon a defendant convicted of disorderly conduct and grossly negligent operation. Id. ¶¶ 1, 26. We concluded that imposition of the condition amounted to plain error, as it constituted an "overbroad delegation of authority not supported by findings." Id. ¶ 70. Such a delegation deprived defendant of a "substantial right" and impugned the integrity of the judicial process by affording probation officers "complete discretion" in deciding which programs a defendant would be required to attend. Id. ¶¶ 73, 70. Moreover, we noted that while the court had made particularized findings regarding the defendant's counseling needs—and accordingly, had imposed a separate condition requiring participation in mental health counselling and anger management—there were no comparable findings justifying granting an officer "unfettered discretion" to order other counseling or training. Id. ¶¶ 70, 71. Finally, we noted that several of our sister states and federal courts had similarly concluded that such a condition "run[s] afoul of separation-of-powers principles." Id. ¶ 72 (citing cases Eighth and Eleventh Circuits and Supreme Courts of South Dakota and Florida).

¶ 16. In this case, the court imposed two conditions related to sex offender treatment. Condition 11 required defendant to "successfully enroll, participate in, and complete a program/treatment for sex offenders as directed by your probation officer or designee and as approved by the Department of Corrections and assume the cost of your treatment." Condition 12 required defendant to "participate fully in the Vermont Treatment Program for Sexual Abusers during the course of your unsuspended sentence. Failure to complete such program while incarcerated may result in a violation of your probation." The probation officer testified

that the broad language of condition 8[5] was intentional to give flexibility to respond to unknown challenges:

> [I]t's written in a way [that is] not specific to any particular thing. It's anything that could happen along the way. We may ask an individual to do some screening and—for substance abuse—but then we find out the screener says no, it needs to be, you know, we can't, you know, we need to have the flexibility and latitude to address their risk need areas, and this allows us to do that.

¶ 17. The trial judge recognized the presence of the other conditions and that defendant had already completed most of them, but imposed the broad general delegation condition in case defendant failed in rehabilitation. Again, the justification for condition 8 was based on the fact that defendant was a sex offender:

> The several conditions about counseling or programming; we realize Mr. Cornell has actually done most of those, but we still find them appropriate were there to be any issues of his faltering in his efforts. That sex offenders fall into a fairly special category of counseling. That has been shown to be successful in trying to reduce any reoffending.

¶ 18. The trial court already had adequate remedies if defendant failed in completing the sex offender treatment programs. While it is permissible under Putnam to delegate authority to a probation officer to select among a pre-determined list of programming options relevant to a defendant's particular needs—for example, substance abuse counseling or anger management—we cannot approve a delegation of "full authority" to impose counseling or training purely on the grounds that defendant may falter in his commitment to pre-existing programming. Putnam, 2015 VT 113, ¶ 72. A court that has failed to identify any particular counseling or training needs cannot categorically impose such a requirement upon all sex offenders. See, e.g., State v. Lockwood, 160 Vt. 547, 558, 632 A.2d 655, 662 (1993) (observing that probation conditions must be "narrowly tailored to fit the circumstances of the individual probationer" (quotation

_____

[5] Although referred to in the January 27, 2015 order as condition 8, the condition had previously been listed as condition K, and is described accordingly in the transcript of the January 8 hearing.

9

omitted)).  Accordingly, we remand to the trial court to either 1) revise the language of condition 8 to constrain and guide a probation officer's implementation of the condition or 2) strike it entirely.

¶ 19.  Third, we consider condition 10, which precludes any "violent or threatening behavior."  Defendant contends this condition also constitutes an impermissible delegation of court authority to the probation officer.  Specifically, defendant argues that because his probation officer has interpreted the condition to grant the power to impose no-contact conditions for adults,[6] the condition infringes upon his substantive due process and First Amendment rights "relating to personal liberties, speech, and associations."  Additionally, defendant maintains the trial court's findings regarding this broadly worded condition were purely "conclusory," as the trial judge justified the imposition of condition 10 by stating it was "one of the essence of being on probation."  We disagree and affirm.

¶ 20.  Although defendant claims that identically worded conditions have been "repeatedly struck down by this Court," we have never specifically deemed a condition prohibiting violent and threatening behavior to be, in and of itself, unlawful.  For example, in State v. Sanville, we reversed a revocation of a defendant's probation for a violation of an identical condition.  2011 VT 34, 189 Vt. 626, 22 A.3d 450 (mem.).  We concluded that where defendant was "mouthy and obnoxious" in "expressing his displeasure at a perceived injustice, id. ¶ 10, the condition "failed to thoroughly apprise [the] defendant of the conduct prohibited."  Id. ¶ 1.  We did not, however, rule that the condition was prima facie invalid; indeed, we noted

---

[6]  This interpretation stems from an incident related by defendant's probation officer to the sentencing court.  A police officer telephoned the probation officer to inform him he had received a complaint from a high school classmate of defendant who had complained that defendant "went on his mother's computer on some sort of Facebook site, and tried to get in touch with her, and she felt threatened by that" because she has a one-year old child and was aware defendant was on the sex offender registry.  Under the auspices of condition 10, the officer gave defendant a verbal warning that his conduct constituted threatening behavior and alerted him that if he tried to contact the woman again, he would "impose a different type of punishment."

that violent, as opposed to threatening, behavior may be "more self-evident," and rejected only the proposition that the language could fairly warn a probationer that he "must curb his tongue in any heated exchange or risk further incarceration," a proposition that would "stretch its meaning impermissibly." Id.  ¶¶ 9, 10.  Further, in the concurrence in State v. Johnstone, 2013 VT 57, ¶¶ 16-17, 194 Vt. 230, 75 A.3d 642, which relied upon Sanville to find that an identical probation condition provided inadequate notice to a probationer who was "mouthing off" to his girlfriend, it was noted that this condition has been "challenged primarily" in cases involving behavior that is "primarily or exclusively speech."  Id. ¶ 20 (Dooley, J., concurring).  As this standard form condition is not imposed or authorized by statute, but instead is "entirely within the control of the judiciary," the concurrence called for its amendment to "eliminate the interpretation questions" that have dogged its enforcement.  Id. ¶ 19, 22 (Dooley, J., concurring).

¶ 21.   Given our case law, we cannot say that condition 10 is an illegal infringement upon due process and First Amendment rights requiring invalidation.  The condition includes no delegation of authority to the probation officer, and the court remains the final arbiter of its meaning. We find that the incident testified to by the probation officer and highlighted by defendant does not support invalidation of the condition.  Although the incident involved only attempted contact via a social media website—in other words, oral, rather than physical, contact—the officer "did not file a violation of probation complaint against Mr. Cornell" but instead gave him a verbal warning, and stated that if he "[did] it again, then [he] would impose a different type of punishment."  Such circumstances are therefore distinguishable from those of Sanville and Johnstone, where the defendants' probation officers filed violation of probation (VOP) complaints against them following the incidents of alleged threatening behavior. Sanville, 2011 VT 34, ¶ 3; Johnstone, 2013 VT 57, ¶¶ 3-5.

¶ 22.   Although we must affirm the validity of the condition, we continue to recognize that the wording of the condition has frequently caused it to be narrowly interpreted to ensure

that the probationer has fair warning of its meaning. In affirming this condition on its face, we do not mean to suggest that the State could pursue a violation of this condition on the basis of the type of conduct for which defendant's probation officer threatened punishment. We ask trial judges to clarify this probation condition by incorporating language that "anticipates the interpretation difficulties and defines more specifically the coverage of the condition." Johnstone, 2013 VT 57, ¶ 21 (Dooley, J., concurring).

¶ 23. The final condition defendant challenges on the grounds that it has already been deemed unlawful is condition 15, which provides "You may not access or loiter or go to places where children are known to congregate, including parks, playgrounds, elementary and high school grounds, unless approved in advance by your probation officer or designee." Defendant argues that condition 15 is "similar and legally indistinguishable" to that struck down in State v. Rivers, 2005 VT 65, 178 Vt. 180, 878 A.2d 1070, and so should be invalidated for impermissible vagueness. We disagree and affirm.

¶ 24. We have recently addressed whether the language "where children congregate" is overly vague and fails to put defendants on notice as to what acts may amount to probation violations. See State v. Gauthier, 2016 VT 37, __ Vt. __, __ A.3d __.[7] Although Gauthier arose in a different context, in a probation revocation proceeding, the rationale for the decision is applicable here:

> There is no merit to defendant's argument that the language "where children congregate" is overly vague . . . . To satisfy due process, a defendant must have notice of what acts may amount to a violation of probation. In interpreting terms of probation, this Court looks to the common understanding of the language used. Congregate is commonly used to mean to "come together in a group or crowd." As other courts have found, the phrase "where children congregate" is descriptive enough to put a defendant on

---

[7] The Gauthier condition read: "You may not access or loiter in places where children congregate, i.e., parks, playgrounds, schools, etc., unless otherwise approved, in advance, by your probation officer or designee." Gauthier, 2016 VT 37, ¶ 20. We do not believe that the small differences in wording change the applicability of the analysis.

notice that it includes all places where children are likely to be found in large numbers. And, as the trial court found here, the fair is a place where children are known to gather in large numbers, especially at the time defendant attended.

We are not persuaded by the cases defendant cites to support his lack-of-notice argument because the language of the conditions in the other cases differs in significant ways from the language in this case. In several of the cases cited by defendant the phrase "where children congregate" follows, rather than precedes, the list of places, and for that reason courts have found that the condition failed to provide clear instruction as to what places must be avoided. For example, in <u>United States v. Peterson</u>, 248 F.3d 79, 86 (2d Cir. 2001), the court concluded that a condition prohibiting the defendant from "being on any school grounds, child care center, playground, park, recreational facility or in any area in which children are likely to congregate" was overly broad because it was unclear if the phrase "area in which children are likely to congregate" applied only to "any area," and could be read to prohibit access to any park, even if it was not a place children were likely to congregate. In another case cited by defendant, the condition prohibited lingering, loitering, or spending time at locations where children were "present." <u>Ellis v. State</u>, 470 S.E.2d 495, 496 (Ga. Ct. App. 1996). The court there concluded this condition lacked specificity because it could be applied to prohibit the defendant "from shopping at virtually any store." <u>Id</u>.

The condition in this case does not suffer from either of these infirmities. The list of illustrative places <u>follows</u> the operative phrase "where children congregate," and therefore provides a sufficient limitation on the places to be avoided. Further, the condition at issue prohibits defendant from accessing or loitering in places where children <u>congregate</u> as opposed to where they are simply present.

<u>Id</u>. ¶¶ 25-27 (citations omitted).

¶ 25. As we noted at the outset, defendant relies on the holding in <u>State v. Rivers</u>, arguing that we essentially decided the issue in that case. In <u>Rivers</u>, the language of the condition was different, prohibiting the defendant from having contact with children. 2005 VT 65, ¶ 1. The trial court interpreted the condition as prohibiting defendant from coming into "close physical proximity" with minors, such that defendant was determined to have violated his probation by standing near children in lines for rides at a fair. <u>Id</u>. We reversed, concluding that

a proximity-equals-contact rule could not be practically extended to a case involving neither a specified individual nor a private location and held the no-contact condition overbroad and unduly restrictive "as applied" by the trial court. Id. ¶¶ 13, 9. We would go well beyond the rationale in Rivers to apply it to the wholly-different condition in this case.

¶ 26.   Finally, we recognize that in contemplating this condition, the trial court relied upon relevant testimony from defendant's probation officer. At the December 3, 2014 hearing, the officer noted the direct relationship between the condition and defendant's crime of sexual contact with a thirteen-year old boy. The officer further noted that because defendant has no children, he has no particular need to access areas where children congregate, although he nevertheless retains the ability to request permission from a probation officer for any extenuating or unforeseen circumstances. The court reiterated these principles in its March 4 hearing, finding that condition 15 was appropriate for deterrence and rehabilitation "based on [defendant's] specific offense." Therefore, for the foregoing reasons, and mindful of the fact that conditions of probation are "read to exclude inadvertent violations," we conclude that condition 15 is not unconstitutionally vague and affirm. MacMillen, 544 F.3d at 76.

¶ 27.   We turn now to those conditions defendant argues impermissibly infringe upon his liberty, privacy, and autonomy. Defendant challenges condition 16, which requires him to give his probation officer search and seizure privileges to search without a warrant and confiscate "if necessary, drugs, pornography or erotica of minor children, digital media, computers or any other items which may constitute a violation of your probation terms." The specific authority to confiscate "computers" is apparently linked to condition 18, which prohibits defendant from owning or possessing a computer at his residence. The validity of that condition is considered below.

¶ 28.   Defendant alleges that the search and seizure condition infringes on his rights under the Fourth Amendment of the United States Constitution and Article 11 of the Vermont

14

Constitution and bears no connection to his offense or rehabilitation. In particular, defendant argues that the condition is unnecessarily restrictive given the trial court's lack of findings to support the condition and reversion to a "categorical approach to probation conditions," under which the trial judge relied upon a generalization that those charged with defendant's "type of offense" often inappropriately use computers and other such devices even though defendant's offense did not involve the use of a computer. We conclude that the condition is impermissible in the absence of any requirement of reasonable suspicion and remand so that the trial court may amend condition 16 accordingly.

¶ 29. We first considered the issue of a probationer's rights with respect to search and seizure in State v. Moses, 159 Vt. 294, 618 A.2d 478 (1992). In that case, the probation condition obligated a defendant to "consent in writing to all inspections and enforcement of [the probation] conditions, including search and investigation without warrant when necessary." Id. at 296, 618 A.2d at 480. Relying upon the United States Supreme Court decision in Griffin v. Wisconsin, 483 U.S. 868 (1987), we held that a warrantless search of defendant's premises was permissible if based on standards that were reasonable under the Fourth Amendment. Id. at 304, 618 A.2d at 484. We discussed cases that had imposed a reasonable suspicion requirement as the standard for judging a search of a probationer's premises. As to the condition now before us, we held that because the condition neither provided guidance as to when a probationer may be searched without a warrant, nor was "based on findings that set a proper balance between probationer's privacy rights and the state's special needs [nor] . . . [was] . . . narrowly tailored to reflect that balance," the condition was invalid and remanded for the trial court to fashion an appropriate condition. Id. at 305, 618 A.2d at 484. We noted that "[t]he nature of the crimes are a primary consideration . . . in fashioning probation conditions." Id.

¶ 30. The issue arose again in Lockwood, where the defendant had been convicted of sex offenses involving children. Probation officers searched the defendant's residence without a

15

warrant and found evidence of his obsession with children. Lockwood, 160 Vt. at 549, 632 A.2d at 657. Relying on Moses, we ruled that the officers could conduct a warrantless search based on reasonable suspicion.[8] Id. at 557-58, 632 A.2d at 626. We noted that "[i]deally, the probation condition itself will limit the search to the specific requirements for the supervision of the particular defendant." Id. at 557, 632 A.2d at 661. We held, however, that the risk of recidivism was high in the defendant's case because the "dual nature of his condition": developmental delays and sexual deviancy, which "supported a broad general search authorization." Id. This circumstance and the focus on the defendant's compulsive sex urges satisfied the narrow tailoring requirement of Moses. Id. at 558, 632 A.2d at 662. Although the probation condition did not contain a reasonable suspicion requirement, we held that reasonable suspicion was present and this justified the search. Id.

¶ 31. We considered the same issues under Chapter I, Article 11 of the Vermont Constitution in Lockwood, where we essentially adopted the same standard for Article 11 compliance. In that case, we held that "if a probation term provides for warrantless searches and the terms of probation are narrowly tailored to fit the circumstances of the individual probationer, the Griffin 'reasonable grounds' standard strikes the proper balance between probationer privacy rights and public protection concerns." Id. at 559, 632 A.2d at 663.

¶ 32. The United States Supreme Court considered a comparable probation condition in United States v. Knights, 534 U.S. 112 (2001). The high court ruled that a search pursuant to a "common" probation condition, requiring a drug offender to " '[s]ubmit his . . . person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search

_____

[8] As in Moses, the probation condition in Lockwood was phrased in a way that arguably meant that defendant waived his right to contest any search, and the trial court rejected defendant's challenge on the waiver theory. We rejected that rationale, stating "[W]e do not rely on defendant's consent to his probation terms. Even when a probationer signs a blanket condition agreeing to future searches, he may continue to enjoy residual privacy rights deserving some constitutional protection." Lockwood, 160 Vt. at 556, 632 A.2d at 661.

warrant, warrant of arrest, or reasonable cause by any probation officer or law officer' " and "supported by reasonable suspicion" satisfied the Fourth Amendment. Id. at 114, 116, 122. The search in Knights was conducted by a law enforcement officer, not a probation officer, and for the purpose of finding evidence of a new and different crime, not a probation violation. Id. at 114. The Supreme Court employed its general Fourth Amendment approach of considering the "totality of the circumstances" and concluded that the probation search condition was a "salient circumstance." Id. at 118. The high court stressed that the defendant's status as a probationer informs both aspects of the Fourth Amendment's reasonableness analysis: balancing individual privacy expectations against legitimate governmental interests. Id. at 119. As an individual convicted of a drug crime who had been "unambiguously informed" of the search condition in his probation order, the defendant had a "diminished . . . reasonable expectation of privacy." Id. at 119, 120. Similarly, as it was conducted under the terms of the condition, the search promoted legitimate governmental interests through furthering the goals of probation: "rehabilitation and protecting society from future criminal violations." Id. at 119. The Supreme Court thus concluded that the balance of those considerations "requires no more than reasonable suspicion" to conduct a warrantless search of a defendant supported by a condition of probation. Id. at 121. The degree of suspicion required involves a calculation of "when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." Id. In a footnote, the Supreme Court added that while the terms of the probation condition permitted a search without any individualized suspicion, they "[did] not decide" whether the condition so eliminated reasonable expectations of privacy or constituted consent that a suspicionless search would have also been constitutional. Id. at 120 n.6.

¶ 33. On a point important to our decision here, the United States Supreme Court specifically rejected the lower court decision that under Griffin the search had to be for probationary purposes. Id. at 120. Rather, it held that "[w]hen an officer has reasonable

17

suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." Id. at 121.

¶ 34. Five years later, the high court relied on Knights to find constitutional California's requirement that all parolees be subject to suspicionless searches in Samson v. California, 547 U.S. 843, 846 (2006). In conducting the reasonableness analysis, the Samson Court noted that parolees have "severely diminished expectations of privacy," id. at 851, because parole is "more akin to imprisonment" than probation. Id. at 850. The court contrasted these reduced expectations with California's "substantial" interest in reducing recidivism and promoting community integration for parolees, an interest undergirded by significant empirical evidence regarding the 68-70% recidivism rate among California's parolee population. Id. at 853. The court concluded that there was little fear the decision would provide peace officers a "blanket grant of discretion," noting that California law prohibits " 'arbitrary, capricious, or harassing searches,' " id. at 856 (citation omitted), and reasoning that the imposition of a reasonable suspicion requirement, in a population highly susceptible to reoffending, would afford parolees "greater opportunity to anticipate searches and conceal criminality." Id. at 854.

¶ 35. We recently evaluated the effect of Samson on the search of a furloughed sex offender who was subject to a provision of a conditional reentry agreement that authorized a suspicionless search of the home. State v. Bogert, 2013 VT 13A, 197 Vt. 610, 109 A.3d 883. Based on a number of factors, we held that Samson controlled the validity of the search under the Fourth Amendment because the defendant's furlough status meant that his expectation of privacy was no greater than that of a parolee in Samson, and the State's supervision goals were no weaker than California's in Samson. Id. ¶ 16. In reaching this decision, however, we noted that Samson was based on the conclusion that parolees have fewer expectations of privacy than probationers. Id. ¶ 14.

¶ 36.   Samson distinguished Knights on the basis of the lesser expectation of privacy and higher risks of recidivism of parolees.   Nevertheless, some courts have authorized suspicionless searches for probationers as well as parolees.   See, e.g., People v. Douglas, 193 Cal. Rptr. 3d 79, 85 (Cal. Ct. App. 2015), as modified on denial of reh'g (Oct. 19, 2015), review denied (Jan. 20, 2016) ("Suspicionless searches are lawful in California for both probationers and parolees, so long as they are not conducted arbitrarily, capriciously, or for harassment."); State v. Vanderkolk, 32 N.E.3d 775, 779 (Ind. 2015) (finding parole and probation to be sufficiently similar that reasonable suspicion is not required for search of probationer as long as probation condition puts defendant on notice that suspicionless searches are authorized).   We do not join these courts in this extension of Samson, and continue to hold that reasonable suspicion for search and seizure imposed on probationers is required by the Fourth Amendment.

¶ 37.   While the above paragraphs describe the state of the law with respect to the Fourth Amendment, we still must address the effect of Article 11.   Although we addressed the effect of the state constitutional provision in Bogert, the context was entirely different.   The question in Bogert was whether the State could search the computer of a convicted sex offender who was on furlough status.   2013 VT 13A, ¶ 2.   No prior decision controlled that issue.   Based on a number of factors that undermined any reasonable expectation of privacy for a person in defendant's status, we held that reasonable suspicion was not required.   Id. ¶¶ 20-24.

¶ 38.   In this case, however, we do have relevant Article 11 precedent: State v. Lockwood.   In Lockwood, we held that Article 11 allowed a warrantless search of a probationer. Lockwood, 160 Vt. at 559, 632 A.2d at 663.   We concluded that "if a probation term provides for warrantless searches and the terms of probation are narrowly tailored to fit the circumstances of the individual probationer, the Griffin "reasonable grounds" standard strikes the proper balance between probationer privacy rights and public protection concerns."   Id.   To the extent that narrow tailoring was a requirement of Griffin, it was clearly eliminated for the purposes of the

19

Fourth Amendment in <u>Knights</u>, which ruled that law enforcement may search a probationer's home for evidence of any crime, whether or not related to the crime for which defendant was convicted and placed on probation. <u>Knights</u>, 534 U.S. at 121. Under <u>Lockwood</u> however, Article 11 continues to require the State to demonstrate both a special need sufficient to justify an incursion on probationer's rights and narrow tailoring.

¶ 39. The probation condition before us is an example of narrow tailoring. It authorizes a search only for contraband—that is, items defendant is prohibited from possessing under the conditions. Thus, we conclude that, in concept, condition 16 meets the requirements of <u>Lockwood</u> and complies with Article 11. Because of this ruling, we need not go further and define the requirements of narrow tailoring in more detail.

¶ 40. Notwithstanding this conclusion, we also find that probation condition 16 needs amendment in three respects. First, as we hold in the following section of this opinion, condition 18 goes too far in prohibiting defendant from possessing a computer and accessing the Internet. <u>Supra</u>, ¶¶ 41-45. As a result, we cannot consider either a computer or digital media to be contraband, such that the State has the right to search for these items on reasonable suspicion that they are in defendant's possession. Second, condition 16 should be redrafted to eliminate the specification that the State's search powers are based on some kind of waiver by defendant. As we held in <u>Lockwood</u>, we do not base a loss of privacy rights on a theory of waiver and the condition should not support that theory. Finally, condition 16 should state explicitly that the State's search rights are dependent on its having reasonable suspicion that evidence of a violation of probation conditions would be found—for example, that the search would find evidence that defendant has bought, possessed, or used a regulated drug, without a prescription, in violation of probation condition 9. We recognize that the requirement of reasonable suspicion is implied so that a search based on reasonable suspicion is valid even if the probation condition does not say so explicitly. Nevertheless, the condition should clearly state the constitutional requirement to

20

make the probationer aware of his or her rights and the State representatives aware of the limitation of its power.

¶ 41. Finally, we consider condition 18, which prohibits defendant from owning a computer in his home or accessing the Internet without approval of his probation officer. Where computer usage is allowed, the condition goes on to authorize the probation officer to monitor usage, including employing specific software for monitoring sex offenders, and to require defendant to pay any reasonable charges associated with monitoring. Defendant urges that "without evidence that [defendant's] offense involved the use of a computer or the internet," the condition is unconstitutionally overbroad and fails to meet Vermont's individualized sentencing requirements. Defendant argues that the court is bound to impose only "fine-tuned" conditions that do not impermissibly restrict liberty, autonomy, and privacy rights. We agree.

¶ 42. We begin by observing that the federal circuit courts have generally evaluated the permissibility of comparable probation conditions in light of whether a defendant's offense involved the use of computer technology. For example, in United States v. Perazza-Mercado, the First Circuit struck down a total ban of the defendant's use of the Internet at home, but limited its decision to a "narrow set of circumstances: where the defendant has no history of impermissible internet use and the internet was not an instrumentality of the offense of conviction." 553 F.3d 65, 69 (1st Cir. 2009). The panel noted its accord with other courts:

> Our sister circuits have upheld broad restrictions on internet access as a condition of supervised release where (1) the defendant used the internet in the underlying offense; (2) the defendant had a history of improperly using the internet to engage in illegal conduct; or (3) particular and identifiable characteristics of the defendant suggested that such a restriction was warranted . . . .
>
> Conversely, in cases where there is an insufficient nexus with a defendant's conduct or characteristics, courts have vacated supervised release conditions restricting internet access. For example, in United States v. Freeman, 316 F.3d 386 (3d Cir. 2003), "there was nothing in the record to suggest that defendant had used the internet to contact young children" or solicit

21

inappropriate sexual contact. Id. at 392. Accordingly, the court found that a restriction forbidding defendant from owning a computer or accessing the internet without the approval of his probation officer was "overly broad." Id.

Id. at 70-71 (citations omitted).

¶ 43. We agree with the reasoning of the federal courts and hold that a condition that imposes a ban on computer or internet usage subject to approval by a probation officer, where the defendant did not actually employ a computer in the commission of the offense, and where no other evidence supports a restriction on a defendant's access to the internet, constitutes a "greater deprivation of liberty than is reasonably necessary to deter illegal conduct and protect the public." United States v. Love, 593 F.3d 1, 12 (D.C. Cir. 2010) (quotations omitted). We do not see a sufficient justification for such a sweeping restriction, which would render nearly all the activities of life incalculably difficult in the modern age, when such a condition "would not have prevented the crime of which [a defendant] was convicted." United States v. Barsumyan, 517 F.3d 1154, 1161 n.12 (9th Cir. 2008).

¶ 44. In this case, the trial court openly acknowledged the lack of fit between condition 18 and defendant's particular circumstances:

> [W]e understand that the offense didn't involve the use of a computer or such, but we found from the testimony that there would be concern that the type of offense can lead to the inappropriate use of such material and devices. So it goes to deterrence as well as to some degree, rehabilitation.

¶ 45. While we acknowledge the comments from defendant's probation officer that such a condition may be salient because of the vast number of child pornography sites and the flexibility this affords officers—indeed, the officer noted he was "not even sure if [they] would always . . . keep this [ban] in place" and anticipated transitioning to simple monitoring—we cannot allow such an overbroad condition of probation to stand when disconnected from the original offense. We therefore strike the first sentence of condition 18, while leaving intact the

22

requirement that defendant, upon reasonable suspicion, must allow his probation officer to monitor his computer and internet usage and pay any associated charges.  See United States v. Stergios, 659 F.3d 127, 134 (1st Cir. 2011) (upholding condition requiring defendant to submit to unannounced examinations of his computer and other devices "when his probation officer has a reasonable suspicion of contraband evidence or that [defendant] has violated a condition of supervision");  United States v. Herndon, 501 F.3d 683, 691 (6th Cir. 2007) (noting that where probationer had agreed to condition consenting to officer checking his computer or software for internet activity, officer "required no more than reasonable suspicion to conduct a check of [defendant's] computer.").  We note the State is free to seek modifications to this condition if they can demonstrate defendant has misused internet technology in any way.  However, in the absence of any such evidence, we believe this amended condition better reflects a balance between the State's substantial interest in supervising defendant's computer use and defendant's privacy rights, which, while reduced on account of his probationary status, were not all together forfeited "by reason of [his] conviction."  Bell v. Wolfish, 441 U.S. 520, 545 (1979).

Affirmed as to conditions 10 and 15.  Remanded as to conditions 8, 19, 16, and 18 for proceedings consistent with this opinion.

FOR THE COURT:

_____
Associate Justice

23